**Francis J. MORGAN, Gary King, Charles W. Richardson and Bob Porter, Plaintiffs,**

v.

**SIGNAL DELIVERY SERVICE, INC., and International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, Local 41, Defendants.**

**No. 87–0351–CV–W–5.**

United States District Court, W.D. Missouri, W.D.

Oct. 16, 1987.

Alex Lewandowski and Janet I. Blauvelt, Dysart, Taylor, Penner, Lay & Lewandowski, P.C., Kansas City, Mo., for plaintiffs.

William W. Allport, Allport, Knowles, Miller & House, Cleveland, Ohio, and David S. Baker, Sherman, Wickens, Lysaught & Speck, Kansas City, Mo., for Signal Delivery.

Michael D. Gordon, Jolley, Walsh, Hager & Gordon, Kansas City, Mo., for Local 41.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

Pending before the Court are defendant Signal Delivery Service's motion to dismiss or, in the alternative, for summary judgment, and defendant International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 41's motion for summary judgment. For the following reasons, the defendants' motions for summary judgment are granted.

### Factual Background

Defendant Signal, employer of the plaintiffs in this action, is a contract motor carrier engaged in transporting various goods for customers throughout the United States. Defendant Signal maintains various truck terminals in order to perform this service, one of which is located in Kansas City, Missouri. Approximately 140 of the drivers of the Kansas City terminal were represented by the Teamsters Union, Local 41, for purposes of collective bargaining in January, 1986.

In 1974, defendant Signal purchased a company, Sloan Transfer, that engaged exclusively in "City Work." City Work limits driving to the City's metropolitan area; therefore, City Work drivers are never required to stay away from home overnight.

In 1975, defendant Signal acquired Kansas City "Road Work" which requires drivers to transport goods between Kansas City and other domestic cities. Though more lucrative, Road Work requires overnight trips, so many drivers prefer City Work. Due to the Road Work/City Work division, defendant Signal established two seniority lists. One list was comprised of the former Sloan drivers and was known as the "City Board" and the other was comprised of the newly acquired drivers which became the "Road Board." The plaintiffs were Sloan drivers who held seniority with the City Board, using their Sloan seniority dates. In 1974 when the plaintiffs began to drive for Signal, their seniority dates were as follows:

| | |
|---|---|
| Francis Morgan | 7/17/73 |
| Gary King | 10/31/72 |
| Charles Richardson | 2/21/72 |
| Bob Porter | 7/24/73 |

These seniority dates were in effect until 1981.

Plaintiffs were on layoff in 1981 when defendant Signal's Special Commodities Division secured an account in Kansas City. The Special Commodities Division held its own seniority board and collective bargaining agreement. The plaintiffs were offered the opportunity to become employees of the Special Commodities Division under the condition that they relinquish their City seniority dates and begin work as a "new hire." Each plaintiff resigned the City Board and acquired a new seniority date, as follows:

| | |
|---|---|
| Francis Morgan | 6/17/81 |
| Gary King | 6/17/81 |
| Charles Richardson | 2/23/81 |
| Bob Porter | 6/17/81 |

In January, 1986, Local 41 and Signal met to discuss modifications of the collective bargaining agreement which were later submitted to a vote of Local 41's Signal membership. These modifications included consolidation and dovetailing of the existing seniority of the Special Commodity and Road Board seniority lists. On April 6, 1986, 99 Signal members met to discuss and vote on these modifications. Of the 99 present, approximately 5 were on the City Board and the remaining 94 were roughly equally split between Road and Special Board seniority drivers. The vote was conducted by secret ballot and counted in the presence of those in attendance. The count was 85 "yes" and 14 "no" for accepting the modifications to the collective bargaining agreement. Defendant Signal implemented the change.

The plaintiffs, claiming to be aggrieved by the consolidation and dovetailing of se-

niority lists because they were in a worse position to successfully bid for new jobs, retained private counsel. Plaintiffs' counsel forwarded position statements to Local 41 and Signal. They also prepared a grievance which was submitted according to the grievance procedure contained in the collective bargaining agreement. The grievance was ultimately denied by the Joint Grievance Committee, resulting in a decision that is final and binding upon the parties.

## Standard of Review

The standard for determining the propriety of summary judgment under Rule 56(b) is well-settled. Summary judgment should be entered only when it is clear that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See also Taylor v. Belger Cartage Service, Inc.*, 762 F.2d 665, 667 (8th Cir. 1985).

■ Although the plaintiffs claim they are bringing a viable cause of action to this Court, in reality they are reasserting the grievance that was rejected by the Joint Committee. The law is clear that an arbitration award may be reviewed only where the plaintiff can show: (1) that his employer breached the collective bargaining agreement, and (2) where the plaintiff's Union breached its duty of fair representation in investigating and/or prosecuting his grievance. *Vaca v. Sipes*, 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967); *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 765, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983). In the case at bar, plaintiffs have made no allegation that defendant Signal breached the collective bargaining agreement, nor have plaintiffs alleged that defendant Local 41 breached its duty of fair representation in prosecuting his grievance. The complaint merely restates plaintiffs' dissatisfaction with the consolidation of the seniority lists and the rulings of the Regional Grievance Committee. Under the applicable law, review of the arbitration is not justified and summary judgment should be entered against the plaintiffs.

## Discussion

Despite voluminous briefs filed by the parties on this motion for summary judgment, the issue here is simple: Is denial of plaintiffs' grievance by the Joint Committee subject to judicial review? The answer to this question is clearly no. Therefore, defendants' motions for summary judgment must be granted.

The Union/Signal relationship is governed by the Collective Bargaining Agreement that was in effect when the consolidation of the road boards took place. This Collective Bargaining Agreement states that: A committee composed of equal representatives of Motor Carrier Labor Advisory Council and the local union shall be impaneled to hear the grievance. *A majority decision of this panel shall be final and binding upon either party* .... Article 8(c).

The plaintiffs have cited *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), for the proposition that plaintiffs can ignore grievance procedures given in the collective bargaining agreement where the employer's conduct repudiates contract procedures. As the defendant Signal noted, however, the *Vaca* court held that plaintiffs in a § 301 action (alleging breach of a collective bargaining agreement) are excused from exhausting mandatory grievance procedures where he can show that his employer has repudiated that *grievance* procedure. As previously noted, courts will only permit a review or rejection of arbitration decisions in certain specific cases where the plaintiff can prove: (1) that his employer breached the collective bargaining agreement, and (2) where the Union breached its duty of fair representation in investigating and/or prosecuting his grievance. *Vaca v. Sipes*, 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967); *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 765, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983).

■ In this action, plaintiffs have made no allegation that their employer or Union failed to properly process their grievance procedure. The plaintiffs were represented by counsel who filed an exhaustive

grievance on their behalf. The grievance was processed pursuant to the terms and conditions of the grievance procedure contained in the collective bargaining agreement. A final and binding decision was rendered by the Joint Committee, denying the plaintiffs' grievance. Plaintiffs have made no allegation that the employer or the Union in any way repudiated the grievance procedures. Therefore, the case of *Vaca v. Sipes* is of no help to the plaintiffs in sidestepping the final and binding decision of the Joint Committee.

The foundational problem with the plaintiffs' claim in this cause of action is that the complaint protests the identical facts and requests the identical relief as contained in their grievance. It is for this reason that the decision rendered by the Joint Committee is dispositive in the case filed in this Court. The principles of the *Steelworkers' Trilogy* are controlling here. The United States Supreme Court in these wellknown labor law cases made it perfectly clear that courts should maintain a "hands-off" policy toward arbitrator's awards made pursuant to a collective bargaining agreement.

> The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling disputes by arbitration would be undermined if courts had the final say on the merits of the awards. As we stated in *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), the arbitrators under these collective agreements are indispensable agencies in a continuous collective bargaining process. *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960).

Therefore, the decision rendered by the Joint Committee is dispositive and this Court may not interfere.

■ The plaintiffs argue that their complaint should be allowed to proceed under common law theories, which are in reality identical to their grievance. This complete-

ly inapposite to the United States Supreme Court's holding in *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 98 S.Ct. 614, 13 L.Ed.2d 580 (1965). In the *Republic Steel* case, the United States Supreme Court noted that contract grievance procedures were a preferred method of settling disputes. The Court found that following the grievance procedures helped Union status by allowing it to participate in administration of the contract; helped employers by limiting the remedies available to aggrieved employees; and helped protect the interests of the employee in most cases. The Court noted that the grievance procedure must be exclusive to be effective. *Id.* at 653, 98 S.Ct. at 616–17. This Supreme Court opinion clearly instructs the Court to refuse to interfere with the arbitration award in order to further the national policy supporting arbitration.

The plaintiffs have advanced numerous arguments and cited numerous cases to justify denying the defendants' motion for summary judgment. The Court finds these arguments unpersuasive and the cited cases irrelevant. This Court finds the issue to be clearly stated and clearly resolved in one sentence: Denial of the plaintiffs' grievance by the Joint Committee may not be disturbed by this Court.

Accordingly, it is hereby

ORDERED that defendant Signal's motion to dismiss is denied. It is further

ORDERED that defendant Signal's motion for summary judgment is granted. It is further

ORDERED that defendant Local 41's motion for summary judgment is granted. It is further

ORDERED that plaintiffs' motion for leave to amend the complaint is denied.